**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

JUSTIN ROBERT MISENHELDER,                          :         Index No.  09 CV 1147 (PKC)
JAMIE LYNN SUTTON and  on behalf of                 :
herself and others similarly situated,              :
                                                    :
                              Plaintiff,            :
                                                    :
       - against -                                  :
                                                    :
650 BROADWAY ASSOCIATES INC.                        :
d/b/a ELLEN'S STARDUST DINER,                       :
ELLEN STURM, AND IRVING                             :
STURM                                               :
                              Defendants.           :

-------------------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

D. Maimon Kirschenbaum (DK-2338)
Matthew D. Kadushin (MK 1968)
JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM LLP
757 Third Avenue, 25th  Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Settlement Class*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................1

        A.      Plaintiffs' Allegations ...............................................................................2

        B.      Defendants' Assertions ..............................................................................3

        C.      Discovery and Negotiations.......................................................................3

        D.      Settlement Terms .......................................................................................4

        E.      Release of Claims ......................................................................................5

        F.      Factors Considered In The Settlement Of The Claims ...............................5

        G.      Class Members' Response To Settlement....................................................6

III.    ARGUMENT...........................................................................................................6

        A.      The Proposed Settlement Should Be Approved...........................................6

                i.      The Proposed Settlement Class Satisfies the
                        Requirements of Rule 23 ................................................................7

                        a.      Plaintiffs Have Met All Of The Prerequisites
                                Under Rule 23(a)...................................................................7

                                1)      Numerosity Is Satisfied...........................................7

                                2)      Commonality Is Satisfied........................................7

                                3)      Typicality Is Satisfied .............................................8

                                4)      Adequacy Is Satisfied .............................................8

                        b.      The Court Should Certify The Settlement Class
                                Under Rule 23(b)(3)..............................................................9

                ii.     The Proposed Settlement Is Fair, Reasonable, And
                        Adequate And Should Be Approved................................................9

                        a.      Procedural Fairness...............................................................9

                        b.      Substantive Fairness.......................................................10

1)    The Complexity, Expense And Likely
Duration Of The Litigation ...................................10

2)    The Reaction Of The Class To
The Settlement .......................................................11

3)    The Stage Of The Proceedings And
The Amount of Discovery Completed...................11

4)    The Risks Of Establishing Liability......................12

5)    The Risks Of Establishing Damages.....................13

6)    The Risks Of Maintaining The Class
Action Through The Trial......................................13

7)    The Ability Of Defendants To
Withstand A Greater Judgment.............................14

8)    The Range Of Reasonableness Of The
Settlement Fund In Light Of The Best
Possible Recovery And The Attendant
Risks Of Litigation.................................................14

iii.    The Notice To Class Members Meets The
Requirements Of Rule 23................................................15

iv.    Incentive Payments Should Be Awarded To The
Named Class Representatives and One Additional
Class Member ...............................................................15

v.    Class Counsel's Attorneys' Fees Should Be Approved.................17

a.    Class Counsel's Requested Fee Award
Is Reasonable .......................................................19

b.    The *Goldberger* Factors....................................20

1)    Counsel's Time And Labor....................................20

2)    The Litigation's Magnitude And
Complexity.............................................................21

3)    The Risks Of Litigation ........................................21

4)    Quality of the Representation ................................22

5)      The Fee Is Reasonable In Relation To
        The Settlement ........................................................23

6)      Public Policy Considerations ................................23

IV.    CONCLUSION...........................................................................................24

## I.     **INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiffs Justin Robert Mishenhelder, and Jamie Lynn Sutton ("Plaintiffs" or "Class Representatives"), individually and on behalf of the class they represent, apply to this Court for final approval of a proposed settlement in this wage and hour class and collective action ("Wage Action").  This action was brought on behalf of certain employees against Defendants 650 Broadway Inc. d/b/a Ellen's Stardust Diner, Ellen Sturm and Irving Sturm (collectively, "Defendants" or "Ellen's").  This settlement will resolve all claims brought before this Court in this action pursuant to the proposed compromise set forth in the Settlement Agreement and Release ("Agreement" or "Settlement Agreement").[1]  The Settlement Class consists of individuals employed by Defendants as tipped employees from February 9, 2003 through March 4, 2010.

On March 4, 2010, the Court preliminarily approved the proposed settlement as being fair, just, reasonable, and in the best interests of the Settlement Class.  In so doing, the Court preliminarily certified the Settlement Class and found that (1) for purposes of the settlement the Class met the requirements for class certification under Rule 23 and (2) the Settlement Notice proposed in the Agreement constituted valid, due, and sufficient notice to Class Members.

Class Counsel mailed the Settlement Notice as provided for in the Settlement Agreement, and no Class Members have opted-out or objected to the settlement.

## II.     **BACKGROUND**

Plaintiffs filed this Wage Action against Defendants on February 9, 2009, on behalf of themselves and others similarly situated alleging wage and hour violations under the FLSA and

---

[1] The Settlement Agreement is attached to Declaration of D. Maimon Kirschenbaum ("Kirschenbaum Decl.") as Exhibit A.

New York Labor Law.  They alleged, *inter alia*, that Defendants failed to pay them and other employees for all hours worked, including overtime hours, and illegally retained Class Members' tips.  The Complaint was subsequently amended, and the First Amended Complaint[2] was filed on March 4, 2009.

### A.  Plaintiffs' Allegations

Plaintiffs bring this action pursuant to federal and state labor laws governing the payment of minimum and/or overtime wages to tipped employees and employers' retention of such employees' tips.  Such laws include the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA"), New York Labor Law §§ 191, 193, 196-d, 198-b, 650, *et. seq,* 652, and 663 and relevant sections of N.Y. Comp. Codes R. & Regs.

Class Representatives primary allegation is that Defendants routinely retained portions of the fixed gratuities that Defendants charged its patrons for private, fixed menu events, instead of distributing these gratuities to the tipped employees.  Specifically, at these private events, Defendants charged patrons an eighteen percent fixed gratuity.  Plaintiffs allege that Defendants distributed three percentage points of the eighteen percent gratuities to management rather than distributing to the entire amount to the waitstaff.  New York law prohibits an employer or an employer's agent from retaining any portion of a gratuity or a charge "purported to be a gratuity." *N.Y. Lab. Law § 196-d.*  The New York Court of Appeals recently found that mandatory charges/gratuities at banquets and/or private events are subject to the restrictions of § 196-d where the customers reasonably believe that charges are in fact gratuities.  *Samiento v. World Yacht, Inc.* 10 N.Y.3d 70, 883 N.E.2d 990, 854 N.Y.S.2d 83 (2008).

Plaintiffs further allege that Defendants failed to pay them wages for all hours worked, including overtime hours.

---

[2] The First Amended Complaint is attached to the Kirschenbaum Decl. as Exhibit B.

The Complaint seeks Class relief, including unpaid minimum wage, overtime compensation, and withholding of tips.  In addition, the Complaint seeks liquidated damages under the FLSA and interest and all costs and attorneys' fees incurred in the prosecution of this Litigation.

### B.  Defendants' Assertions

Defendants vigorously deny all claims in Plaintiffs' Complaint.  Defendants claim that (a) the charges in question were not gratuities under § 196-d, (b) they did not illegally retain any portion of gratuities belonging to tipped employees, (c) they paid employees for all regular time and overtime, and (d) they are not liable for any unpaid tips and/or wages.

### C.  Discovery and Negotiations

Starting in or around July of 2009, the Parties exchanged extensive discovery, amounting to hundreds of documents.  This document discovery was comprehensive, consisting of approximately six years of monthly and yearly records for sales that included every private event.  Kirschenbaum Decl. ¶ 2. Class Counsel carefully reviewed all documents produced by Defendants and discussed them with Plaintiffs and Class Members in order to determine the extent of Defendants' liability and damages.  *Id.* at. ¶ 3.  After analyzing and reviewing this data, Plaintiffs' counsel outlined the preliminary results of their review in detailed spreadsheets, which they provided to Defendants.  *Id.* During telephone conversations with Defendants' counsel, Plaintiffs' counsel reviewed these spreadsheets together with the documents produced.  *Id.*

Counsel for the Parties held several negotiating sessions.   *Id*. at ¶ 4.  The negotiations were at all times hard-fought, and Class Counsel made clear to Defendants that Plaintiffs would move forward with full-blown litigation if they could not achieve a prompt settlement that was highly favorable to the Class. *Id.* After months of negotiations, the Parties reached a settlement in

principle on or around December, 2009. The Parties continued negotiating terms until they agreed to the settlement agreement on February 25, 2010. *Id*.

### D. <u>Settlement Terms</u>

The Settlement Agreement provides that Defendants shall pay a total Net Settlement Amount ("NSA") of Two Hundred and Fifteen Thousand Dollars ($91,500.00). The NSA includes attorneys' fees, costs, taxes (excluding employer's share of taxes), and any enhancement awards.

Under the Settlement Agreement and subject to the Court's approval, there will be a payment of attorneys' fees and costs of $30,500 and a small individual enhancement award of $2,500 to Plaintiff Misenhelder. The remaining amount shall be distributed among Class Members who do not opt out of the litigation ("Settlement Class Members") on a pro-rata basis determined by analysis of Defendants records, which closely reflect what each Qualifying Class Member would be entitled to if she ultimately prevailed on her claims in this Lawsuit. Defendants will withhold relevant taxes from these payments.

The individual settlement amount will therefore be calculated as follows:

"The Individual Settlement Amount shall be calculated using the following four steps: 1) each Class Member will receive 4 points for every week worked for Defendants between the beginning of the Recovery Period and February 9, 2009, and 1 point for every week worked for Defendants between February 9, 2009 and the end of the Recovery Period; (2) the Class Fund shall be divided by the aggregate number of points earned by the Class Members during the Recovery Period ("Point Value"); (3) for each Qualified Class Member, the number points earned by the Qualified Class Member during the Recovery Period shall be multiplied by the Point Value; and (4) Defendants will then subtract applicable payroll deductions from such amounts."

Settlement Agreement ¶ 2.1.

### E.  **Release of Claims**

In return for the above consideration, Settlement Class Members will release all "Released Claims" (as defined in the Settlement Agreement) against each and all of the Defendants and related entities.  In general, Settlement Class Members will release all wage and hour claims under state and federal law.  Settlement Class Members will retain claims unrelated to their wage and hour claims.

### F.  **Factors Considered In The Settlement Of The Claims**

Based on sample information provided by Defendants and Plaintiffs' own data, the Settlement represents a recovery of most, if not all, of the money Defendants withheld from the Class.  Specifically, Defendants provided Plaintiffs with precise data regarding the amount of service charge/gratuity money not distributed to service employees.  This figure is roughly $90,000.  Kirschenbaum Decl. ¶ 5.  Defendants' additional claims are relatively small in comparison with the claim of gratuity retention and do not significantly impact the maximum recovery. *Id.* at ¶ 6.  Accordingly, the $90,500 settlement figure represents a recovery that is possibly greater than all of the money withheld from the Class.  The settlement amount is highly favorable to the Class, as it assumes a complete victory on class certification, the merits, and the amount of liability, all of which Defendants would likely vigorously dispute should this Litigation continue.

In considering the settlement, Plaintiffs and Class Counsel also accounted for the time, delay and costs of further litigation.  The proposed settlement assured Plaintiffs they would receive virtually all of their potential damages in the near future.  In contrast, additional litigation offered a limited upside but significant downside.  Therefore, Plaintiffs and Class Counsel reasonably determined it was in the best interest of the class to resolve the matter at this time.

### G.  Class Members' Response To Settlement

The response to the settlement has been extremely positive.  On or about May 1, 2010, Counsel sent out 477 notices of settlement.  Kirschenbaum Decl. ¶ 7.  Shortly thereafter Class Counsel and Defendants learned that an administrative error was made in connection with class member database used for the class notice mailing. *Id.* at ¶ 8.  Specifically, the class member database inadvertently included the names of a few individuals who do not fall within the definition of class members under the settlement agreement. *Id.*  As a result, on June 10, 2010, Plaintiffs sent a second notification to those individuals notifying them that they had been incorrectly included in the class action notice.  *Id.* No Class Members have opted out of the action, and no Class Members have objected to the settlement.  *Id.* at ¶ 9. Accordingly, there was clear approval of the settlement.

### III.   ARGUMENT

### A.  The Proposed Settlement Should Be Approved

Rule 23(e) requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  *See also D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).

Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### i.  The Proposed Settlement Class Satisfies the Requirements of Rule 23

Prior to granting final approval of a settlement, a district court determines whether a proposed settlement class meets the requirements of Rule 23 and should be certified.  *In re Telik, Inc. Sec. Litig*, 576 F. Supp. 2d at 581-82.  Under Rule 23, a class may be certified if there is (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and where one of the Rule 23(b) requirements is met.[3]  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *8 (S.D.N.Y. Jan. 31, 2007).  Here, the proposed class meets the numerosity, commonality, typicality, and adequacy standards and Rule 23(b)(3)'s requirement that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### a.  Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

### 1)  Numerosity Is Satisfied

Numerosity is presumed satisfied where there are at least forty class members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Class in this case includes over 394 people and thus is so numerous that joinder of all Members is impracticable.

### 2)  Commonality Is Satisfied

"The commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class."  *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001).  Here, the claims of Plaintiffs and the Class all revolve around the same questions of law and fact regarding whether (1) the service charges in

---

[3] Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

question were in fact tips; (2) Defendants or their agents unlawfully retained portions of Class Members' tips; and (3) Defendants compensated Class Members for all hours worked, including overtime.  Since Plaintiffs challenge common practices and procedures at Ellen's to which they allege all Class Members were subject, the commonality requirement is easily satisfied.

### 3)  Typicality Is Satisfied

The typicality requirement is satisfied here because the Class Representatives' claims "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members[,]" *Taft*, 2007 U.S. Dist. LEXIS 9144, at *10, and the claims of the Class Representatives and the proposed Class Members rely on "similar legal arguments" that Defendants failed to compensate them properly.  *Robinson v. Metro N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).

### 4)  Adequacy Is Satisfied

Adequacy is satisfied where "1) Plaintiff's interests are [not] antagonistic to the interests of other members of the class and 2) Plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs are adequate representatives of the proposed Class and have fairly and adequately represented and protected the interests of the Class in achieving this settlement. Plaintiffs have no known conflicts with any Class Members.  Kirschenbaum Decl. ¶ 10.

In addition, Class Counsel D. Maimon Kirschenbaum of Joseph, Herzfeld, Hester & Kirschenbaum LLP is highly experienced in complex wage and hour litigation.  *Id.* at ¶¶ 14-23. Class Counsel conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that is highly favorable and provides prompt

and valuable relief to Class Members.  Accordingly, the adequacy requirement of Rule 23 is satisfied.

### b.  The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3).  The above-described common questions of law and fact predominate over any individual issues such as the nature and extent of damages.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

A class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Class Members is impracticable.  Moreover, as damages suffered by individual members of the Settlement Class are small compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Class Members to individually redress the harm done to them.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005); *Taft*, 2007 U.S. Dist. LEXIS 9144, at *12; *Ansoumana*, 201 F.R.D. at 89.

### ii.  The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that lead to the settlement and the substantive terms of the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Because this settlement was negotiated prior to class certification, "it is subject to a higher degree of scrutiny in assessing its fairness."  *D'Amato*, 236 F.3d at 85.

### a.  Procedural Fairness

A presumption of fairness arises where a class action settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted).  Relevant factors include "[t]he

experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ.10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

The Parties, both represented by experienced counsel, engaged in extensive, arm's-length hard-fought negotiations over the course of several months before ultimately reaching a settlement.  Accordingly, the settlement is entitled to a presumption of fairness and adequacy.

### b.  Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *see also Wal-Mart Stores, Inc.*, 396 F.3d at 117.  These factors ought not be applied in a formulaic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

### 1)  The Complexity, Expense, And Likely Duration Of The Litigation

To assess a settlement's substantive fairness, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently

complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank*, 228 F.R.D. at 184-85 (internal quotation omitted).  If this case continues, there will be significant costs that will deplete any recovery, including numerous depositions, further document production and review, trial, and possible appeals.  Moreover, there is likely to be significant motion practice.  For example, Defendants will presumably oppose any motion for class certification and move for summary judgment to narrow the issues.  This will result in significant costs and delay in the resolution of this case.  *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23006, at *10 (S.D.N.Y. Mar. 24, 2008).

### 2)   The Reaction Of The Class To The Settlement

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that formally objects to and opts out of the settlement.  Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

This factor weighs heavily in favor of approving the proposed settlement.  Class Counsel mailed 394 notices.  No Class member opted out of the action, and no Class Member objected to the settlement.  Kirschenbaum Decl. ¶¶ 8-9.  Therefore, Class Members' satisfaction with the settlement is clear.

### 3)   The Stage Of The Proceedings And The Amount Of Discovery Completed

Courts also consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement.  *Velez v. Roche*, No. 02 Civ. 0337, 2007 U.S. Dist. LEXIS 46223, at *18 (N.D. Cal. June 30, 2004).  Courts look at whether "the parties conducted sufficient discovery to understand

their claims and negotiate settlement terms." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20.

Class Counsel entered into the proposed Settlement Agreement with a thorough and full understanding of their case and the potential scope of damages. As set forth above, the Parties engaged in extensive paper discovery pertaining to sample periods reflective of the potential damages throughout the Class Period. Class Counsel carefully reviewed this data with Plaintiffs and numerous Class Members. Class Counsel also received a sworn statement from Defendants' accountant attesting to the accuracy of the data. Consequently, Class Counsel was able to properly evaluate the strengths and weaknesses of the claims and defenses and obtain an excellent result for the Class.

### 4)   The Risks Of Establishing Liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

As discussed above, Defendants asserted legal and factual defenses to the underlying claims in this lawsuit. Specifically, Defendants would dispute that the service charges in question were in fact tips. Alternatively, Defendants would argue that even if service charge were tips, most of the monies were in fact actually distributed in full to the tipped employees. With regard to time shaving and off the clock work, Defendants assert that Class Members were paid for most if not all hours worked, and that if any violation occurred it did not occur at the level of magnitude alleged by Plaintiffs. While Plaintiffs are confident that they would prevail on both of these issues, Plaintiffs' recognize that no result is guaranteed in litigation and appreciate that there is some risk Defendants would prevail.

### 5)   The Risks of Establishing Damages

Courts also consider the risks of establishing damages.  Regardless of Plaintiffs' ability to establish liability, they still face "substantial risks in proving its damages at trial."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.

Plaintiffs may have difficulty establishing the full extent of class-wide damages at trial, as explained above.  Moreover, "damages are a matter for the jury, whose determinations can never be predicted with certainty."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365.

### 6)   The Risks Of Maintaining The Class Action Through The Trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.

If the proposed Settlement Agreement is not approved, Plaintiffs will move for class certification of the state law claims.  This motion will be time-consuming and costly, and Defendants will likely oppose it.  Although Plaintiffs believe that the Court would ultimately approve class certification, defendants would likely challenge Rule 23 class certification for plaintiffs' overtime claim because of the individualized issues relating to time-shaving.  *See Alix*

*v. Wal-Mart Stores, Inc.*, 838 N.Y.S.2d 885 (Sup. Ct. 2007) (upholding trial court's rejection of class certification in an off-the-clock case because of the predominance of individualized issues).

### 7)  The Ability Of Defendants To Withstand A Greater Judgment

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.  That a defendant can withstand a greater judgment does not bar a finding that the settlement was fair, reasonable, and adequate.  *Id.*

Plaintiffs are not fully aware of Defendants' financial state.  However, the restaurant industry is generally a low-margin industry, especially in light of current economic conditions in New York City, and a payout of this size is significant to Defendants.

### 8)  The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation

The final two *Grinnell* factors can be considered together.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *24.  "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S. Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455).  The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment."  *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement.

> The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."

*Frank*, 228 F.R.D. at 186 (internal quotations and citations omitted).

As discussed above, Plaintiffs face certain risks in maintaining a class and proving and collecting their best possible recovery.  Nevertheless, the settlement is equal to all or almost all of the money Class Counsel estimates was wrongfully withheld from the Class.  The settlement also provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

### iii.   The Notice To Class Members Meets The Requirements Of Rule 23

Under Rule 23(c)(2)(B), "the settlement notice must fairly apprise the prospective members  of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (internal quotation omitted).  The notice mailed by class counsel was already approved by this Court and was found to satisfy this requirement.

### iv.   Incentive Payments Should Be Awarded To The Named Class Representatives And One Additional Class Member

Subject to the Court's approval, the Settlement Agreement provides for a modest payment of $2,500 to Plaintiff Misenhelder who was instrumental in facilitating a resolution of this matter. Plaintiffs' Counsel is aware based on prior experience and published decisions, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 436 (S.D.N.Y. 2007), that this Court is hesitant to approve incentive awards. Nonetheless, the circumstances of this particular case warrant the Court's consideration.

A court has discretion to grant enhancement awards in a class action.  In doing so, a court will consider

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the

15

> time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the clam, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted).  Incentive "awards are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Id.*; *see also Velez*, 2007 U.S. Dist. LEXIS 46223, at *23.  Indeed, the New York City restaurant industry is close knit.  Employees or former employees like Plaintiff Misenhelder who takes a leading role in lawsuits like this one risk losing future employment opportunities within the industry. Kirschenbaum Decl. ¶ 13.

Plaintiff Misenhelder expended considerable time and effort to assist Class Counsel with the case.  He was instrumental to the initiation and investigation of the case.  He reviewed documents, explained relevant and necessary factual information to Class Counsel, and evaluated Defendants' defenses. *Id.* at ¶ 11.  He also spent significant time speaking to current and former employees of Defendants about the case, encouraging their participation in the lawsuit, and explaining the nature of the lawsuit.   Thanks to these individuals, important evidence and new opt-in members for the class action were acquired.  *Id. at ¶ 12.*

The enhancement payment totaling $2,500 for one Plaintiff is extremely modest in comparison with those approved by other courts in this District,[4] representing approximately

---

[4]   *See, e.g., Frank,* 228 F.R.D. at 187 (awarding an incentive award to one individual for $10,523.37); *Strougo,* 258 F. Supp. 2d at 263-264 (awarding an incentive payment of $15,000 for one individual); *Sheppard v. Consolidated Edison Co. of New York, Inc.,* No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314 at *20 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action); *Roberts v. Texaco,* 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (incentive payment of $212,500 for six named plaintiffs in a race discrimination class action)

4.16% of the Settlement Fund.  *See*, *e.g.*, *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8, 14-15

(awarding incentive payments totaling 3.67% of $450,000 settlement); *Salus v. Tse Grp., LLC*,

No. 07 Civ. 03142 (S.D.N.Y. April 3, 2008)[5] (approving incentive payments totaling 5.6% of

$375,000 settlement for four plaintiffs); *RMED Int'l v. Sloan's Supermarkets*, No. 94 Civ. 5587,

2003 U.S. Dist. LEXIS 8239, at *7 (S.D.N.Y. May 15, 2003) (approving an incentive award of

2.56% of $975,000 settlement for a single named plaintiff).  Because of his time, assistance,

development of the case, and subjection to – at the very least – fear of retaliation, the payment

Plaintiff Misenhelder is appropriate and justified as part of the overall Settlement.

### v.  Class Counsel's Attorneys' Fees Should Be Approved

Class Counsel seeks one-third of the Settlement Amount as attorneys' fees.  This figure is

less than the actual fees/costs accrued by Class Counsel as calculated by the lodestar method.

It is well established that "attorneys who create a common fund to be shared by a class

are entitled to an award of fees and expenses from that fund as compensation for their work."  *In*

*re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses

are paid from the common fund so that all class members contribute equally towards the costs

associated with litigation pursued on their behalf."  *Id.*  The award of attorneys' fees has the

three-fold benefit of (1) "providing just compensation," (2) "encourag[ing] skilled counsel to

represent those who seek redress for damages inflicted on entire classes of persons," and (3)

"discourag[ing] future misconduct of a similar nature."  *Id.*

The Second Circuit permits a district court to calculate reasonable attorneys' fees by

either the lodestar or percentage method.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50

(2d Cir. 2000).  Under the lodestar method, "the district court scrutinizes the fee petition to

---

[5] The Order awarding the referenced incentive payments in *Salus v. Tse Grp., LLC* is attached to the Kirschenbaum Decl. as Exhibit C.

ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* at 47.  Once that calculation is complete, the district court has discretion to "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.*

Under the percentage method, the district court "sets some percentage of the recovery as a fee.  In determining what percentage to award, courts look to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* (internal citation omitted).  Under either method, the fee must be "reasonable," and "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.*

Although both the lodestar and percentage methods are permissible,

[t]he trend in the Second Circuit recently has been to use the percentage method. The percentage method, though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition.

*Hicks*, 2005 U.S. Dist. LEXIS 24890, at *22-23 (internal citation omitted); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 586.  Moreover, "the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

Nevertheless, even where the percentage method is used, "the lodestar remains useful as a baseline[,]" and the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *53 (S.D.N.Y. Feb. 16, 2007).

### a.  Class Counsel's Requested Fee Award Is Reasonable

Pursuant to the proposed Settlement Agreement, Class Counsel seeks an award of

$30,500.00, or 33.33% of the settlement amount for attorneys' fees and costs.  *In re Nortel*

*Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (recognizing that the fee agreed

upon by lead plaintiffs may "offer the best indication of a market rate").  Class Counsel will pay

all incurred costs and expenses from the portion of the fund they are awarded and will not seek a

separate award for costs.  The percentage of the fund sought is consistent with the norms of class

litigation in this Circuit.  *See*, *e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v.*

*Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming district court's

award of attorneys' fees and costs equal to 30% of a $42.5 million settlement fund); *Gilliam*,

2008 U.S. Dist. LEXIS 23016, at *15 (awarding fees of 33.33% of the settlement fund

($450,000) plus costs); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8283, 2005 U.S. Dist.

LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of 33 1/3% of

settlement fund ($2.9 million) plus costs and expenses; *Maley*, 186 F. Supp. 2d at 370, 374

(awarding fees of 33.33% of the $11.5 million settlement fund and recognizing that courts in the

Second Circuit have awarded fees as large as 50% of a settlement fund).

Unlike a class settlement of hundreds of millions of dollars, a 33.33% award of

attorneys' fees in this case would not be a windfall to Class Counsel. *Hicks*, 2005 U.S. Dist.

LEXIS, at *25  ("[a]s the size of the settlement fund increases, the percentage of the fund

awarded as fees often decreases[.]")  This is particularly so because Class Counsel will pay costs

and expenses out of this portion.  *Cf. EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S.

Dist. LEXIS 57918, at *57 (recognizing that it is generally appropriate to award class counsel

expenses incurred in the litigation).

Class Counsel invested over $31,431.12 worth of time and costs in obtaining a fair settlement for the Class.  Counsel now seeks 33.33% of the settlement fund, or $30,500, in attorneys' fees.  Kirschenbaum Decl. ¶ 23.  Counsel is therefore is asking for a lodestar percentage of .97 less than the lodestar amount.  This Court has approved lodestars multipliers greater than 1.00.  *Sines v. Serv. Corp. Int'l*, 03 Civ. 5465 (PKC), 2006 U.S. Dist. LEXIS 25072, * at 10 (S.D.N.Y. May 1, 2006) (Castel, J.) (approving a multiplier of 1.23 times the lodestar); *In re AMF Bowling Sec. Litig.*, 334 F. Supp. 2d 462, 469 (S.D.N.Y. Sept. 13, 2004) (Castel, J.) (approving a multiplier of 1.43 times the lodestar).  Therefore, given the results described above, Counsels' request for a percentage equal to less than the lodestar is modest.

### b.   The *Goldberger* Factors

Whether the percentage or lodestar method is used, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  209 F.3d at 50 (internal quotation omitted; alteration in original).

### 1)   Counsel's Time And Labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement.  Class Counsel reviewed countless documents, interviewed numerous Plaintiffs and Class Members, analyzed extensive wage and payroll records to determine damages, engaged in detailed conversations with Defense Counsel about the substance and value of the case, and spent hours negotiating with Defense Counsel in an attempt to reach a resolution. Class Counsel was available for Class Members at all hours via cell phone, and Class Members availed themselves of this frequently.

In their representation of the class, Class Counsel expended nearly 70 attorney hours and 46 paralegal hours.  *Id.* at ¶ 23.  Class Counsel also has ongoing duties in administering the settlement, which will require additional professional time.  Class Counsel have kept expenses and attorney hours relatively low by litigating this action in an efficient and cost effective manner.  Class Counsel worked to limit the duplication of effort and assigned work to the lowest billing timekeepers (often paralegals) when possible.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 3004) (supporting counsel's efforts to "minimize unnecessary duplication of work").

### 2)   The Litigation's Magnitude And Complexity

Class actions are inherently complex.  With 394 Class Members, this class is comparable to other wage and hour class actions.  *See*, *e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) (270 class members); *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *4 (245 class members); *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *15 (S.D.N.Y. Sept. 28, 2007) (Pauley, J.) (46 class members).

### 3)   The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."  *Taft*, 2007 U.S. Dist. LEXIS, at *30 (internal quotation omitted); *see also In re Global Crossing*, 225 F.R.D. at 467 (noting that "[t]he contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees").  Class Counsel took this case pursuant to retainer agreements with the named Plaintiffs which stated that Counsel would receive one third of the recovery *only if* Plaintiffs obtained a recovery.  Had Plaintiffs obtained no recovery, Counsel would have received no payment.  Similarly, had Plaintiffs not maintained this action as a Rule 23 class action, the Settlement Amount would have been drastically reduced.

Moreover, "this is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992).  There was no governmental investigation or prosecution of this matter.  *See In re Priceline.com, Inc. Sec. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *18 (D. Conn. July 19, 2007) (noting that the absence of government prosecution increases litigation risks).

### 4)   Quality Of The Representation

Class Counsel have extensive experience representing workers in wage-hour class actions and civil rights actions.  Kirschenbaum Decl. ¶¶ 14-23;  *see, e.g., Pefanis v. Westway Diner, Inc.*, 08 Civ. 002 (DLC), (attached to Kirschenbaum Decl. as Ex. D);  *In re Milos Litig.*, 2010 U.S. Dist. LEXIS 3038; *Shahriar et al v. Smith and Wollensky Restaurant Group*, *et al,*  Index No. 08 cv 0057 (attached to Kirschenbaum Decl. as Ex. E).  *See also*, *e.g.*, *Delaney v. Geisha NYC, LLC*, No. 09 Civ. 1458, ---F.R.D. ----, 2009 WL 3027335, (S.D.N.Y. September 22, 2009) (conditionally certifying FLSA collective action brought by restaurant employees); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification of settlement class in wage and hour class action); *Williams v. Twenty Ones, Inc.*, No. 07 Civ. 3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective action of restaurant/club workers); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007) (conditionally certifying FLSA collective action of restaurant workers).  Over the last several several years, Class Counsel have recovered well over $14,000,000, for thousands of New York City restaurant workers.  Kirschenbaum Decl. ¶20.

Class Counsel used their experience to obtain an excellent result for the class in a time efficient manner.  *See In re Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *15 ("The quality of

representation here is demonstrated, in part, by the result achieved for the class.").  Indeed, no class members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."  *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Defendants are represented by Jonathan Stoler,[6] an experienced employment litigator and expert in wage and hour law. Mr. Stoler is a partner at Sheppard Mullin, LLP, where he focuses his practice on employment law.

### 5)   The Fee Is Reasonable In Relation To The Settlement

A fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit."  *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement).  While this percentage could constitute a "windfall" in cases involving larger settlement funds, the $71,666.66 fund in this case "does not create such an issue."  *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92 Civ. -3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

### 6)   Public Policy Considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374.  Moreover, given the relatively small recoveries of

---

[6] http://www.sheppardmullin.com/jstoler.

each Class Member, it is unlikely that "without . . . class representation[] they would be willing to incur the financial costs and hardships of separate litigations."  *Frank*, 228 F.R.D. at 181.

**IV.**      **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask that the Court (1) grant final approval of the class action settlement; (2) certify the settlement class; (3) award Class Counsel attorneys' fees; and (4) approve the enhancement awards requested.

Respectfully submitted,

Dated: New York, New York
          July 13, 2010

JOSEPH, HERZFELD HESTER &
KIRSCHENBAUM LLP

/s/ D. Maimon Kirschenbaum
D. Maimon Kirschenbaum

757 Third Avenue, 25th Floor
New York, New York 10017
Tel: 212-688-5640
Fax: 212-688-2548

*Attorneys for Settlement Class*